IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00214-MR-WCM

| | |
|---|---|
| ANDRE DAVID WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| TODD E. ISHEE, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant Keven R. Chung's Motion for Summary Judgment [Doc. 37]. Also pending is the Defendant's Motion to Seal [Doc. 43].

**I.   BACKGROUND**

The Plaintiff Andre David Williams ("Williams" or simply, "the Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Marion Correctional Institution.[1] The Plaintiff's unverified Complaint[2] passed initial review against Defendant Chung for the

---

[1] The Plaintiff is presently incarcerated at the Foothills Correctional Institution.

[2] The Complaint is not signed under penalty of perjury. See 28 U.S.C. § 1746. It contains a "North Carolina Notary Acknowledgement" which indicates only that the Plaintiff signed the Complaint. [Doc. 1-1 at 1]. Such is not the equivalent of a verification or affidavit. See generally N.C. Gen. Stat. § 10B-41 (describing notarial certificate of acknowledgement); Pratt v. Allbritton, No. 4:16-cv-00198-BR, 2018 WL 4610151, at *7 (E.D.N.C. Aug. 8,

use of excessive force. [See Doc. 1: Compl.; Doc. 9: Order on Initial Review]. The Plaintiff seeks a declaratory judgment, injunctive relief, compensatory and punitive damages, costs, a jury trial, and any additional relief that the Court deems suitable. [Doc. 1: Compl. at 14].

The Defendant filed a Motion for Summary Judgment [Doc. 37: MSJ] and supporting exhibits, some of which he has moved to seal [Docs. 39-41: MSJ Exhibits; Doc. 43: Motion to Seal]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 42: Roseboro Order]. The Plaintiff has filed an Affidavit and exhibits opposing summary judgment. [Doc. 44: Plaintiff's Affidavit; Doc. 45: Plaintiff's Exhibits]. The Defendant has not replied, and the time to do so has expired. These matters are ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is

---

2018), report adopted, No. 4:16-cv-198-BR, 2018 WL 4604522 (E.D.N.C. Sept. 21, 2018), aff'd sub nom Pratt v. Albriton, 764 F. App'x 343 (4th Cir. 2019). Accordingly, the Complaint will not be considered in the summary judgment analysis.

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable

3

jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  To that end, only evidence admissible at trial may be considered by the Court on summary judgment.  Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III.  FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff as the non-moving party, shows the following.

The Plaintiff was transferred to the Marion CI on January 31, 2023. [Doc. 39-1: MSJ Ex at 5 (Offender Movement Log)]. On February 28, 2023, the Plaintiff was brought to see Dr. Chung and Nurse Clayton S. Moore regarding an abnormal thyroid test. [Doc. 39: Chung Affid. at ¶ 11; Doc. 41: Moore Decl. at 3]. The Plaintiff was in full restraints during the examination and two correctional officers remained at the door in light of the Plaintiff's restrictive housing status. [Doc. 39: Chung Affid. at ¶ 11; Doc. 44: Plaintiff's Affid. at ¶ 5].

Nurse Moore began checking the Plaintiff's vitals while Dr. Chung asked the Plaintiff questions about his medical conditions. [Doc. 44: Plaintiff's Affid. at ¶ 5]. As the Plaintiff responded, Dr. Chung began cutting him off and speaking to him in an "unprofessional" manner, saying repeatedly "shut the hell up, I know what I'm doing." [Id. at ¶ 6]. The Plaintiff told Dr. Chung not to speak to him that way because the Plaintiff is a "grown man." [Id.]. As the Plaintiff began repeating himself, Chung said "shut up let me check your thyroid." [Id.]. Chung "negligent[ly] assault[ed]" the Plaintiff by

5

"grabb[ing]" the Plaintiff "hard and fast to the point that [Plaintiff's] whole head jerked back." [Id. at ¶¶ 6, 10-11]. Chung used his "whole hand" rather than his fingers on the Plaintiff's neck to "choke[]" the Plaintiff while purporting to examine his thyroid gland.[3] [Id. at ¶ 6]. The Plaintiff's restraints prevented him from physically removing Chung's hand from his neck. [Id.]. Correctional officers then removed Plaintiff from the medical room due to the Plaintiff's "aggressive, belligerent behavior," which ended the examination. [Id. at ¶ 11; Doc. 44: Plaintiff's Affid. at ¶ 6; see Doc. 39-1: Chung Ex at 26; see also id. at 27].

Dr. Chung had used his standard practice in assessing a thyroid condition by placing one hand on the Plaintiff's shoulder and using his other hand to palpate the Plaintiff's thyroid, which is located in the front and middle of the neck. [Doc. 39: Chung Affid. at ¶¶ 11, 22]. Nothing that Chung did harmed the Plaintiff in any way, and the Plaintiff did not have any marks on his neck when officers removed him from the examination table. [Doc. 39: Chung Affid. at ¶¶ 11, 22].

The Plaintiff was not written up for any disciplinary infractions for the incident with Dr. Chung. [Doc. 44: Plaintiff's Affid. at ¶ 7]. He filed a

---

[3] Dr. Chung denies grabbing the Plaintiff or acting aggressively. [Doc. 39: Chung Affid. at ¶ 11; see Doc. 41: Moore Decl. at ¶ 6].

grievance and an "incident report"[4] that same day.[5] [Doc. 44: Plaintiff's Affid. at ¶¶ 7-8]. The Plaintiff's grievance states:

> … Mr. Chung conducted himself in a unprofessional maner. At or around 9:50 AM I was escorted by Officers to see the medical provider. At this time I attempted to explain my medical condition, when Mr. Chung became beligerant with me. He told me to shut up numerous times and then he even went as far as grabing my throat in a violent manner saying "let me check your thyroid." In my experience being a chronic disease patient I haven ever been handled so violently by a medical staff. I though they was suppose to help me not hurt me.

[Doc. 1-2: Plaintiff's Ex. at 5] (errors uncorrected).

The Plaintiff was seen by Nurse Jennifer Francis at 12:19 that afternoon because "Pt. claimed that he was assaulted by a staff member earlier in the day." [Doc. 39-1: Chung Ex at 29 (Feb. 28, 2023 Admin. Note)]. The officer in charge came to the Plaintiff's cell, took pictures of his neck,[6] and collected the grievance and "incident report." [Doc. 44: Plaintiff's Affid. at ¶ 10]. Nurse Francis examined the Plaintiff and noted a "small area of redness to the left side of the anterior neck. No broken skin or bleeding. No

---

[4] The Plaintiff states that the Court has a copy of the "incident report" but he fails to provide a citation and no such document appears in the Record. [Doc. 44: Plaintiff's Affid. at ¶ 7].

[5] The Court need not accept the Plaintiff's contention that he filed the grievance the day after the incident; the grievance and the screening response are both dated February 28, 2023. [See Doc. 1-2: Plaintiff's Ex. at 5 (Grievance dated "2-28-23"); id. at 1]; Scott, 550 U.S. at 380.

[6] No pictures have been filed with the Court.

other discolorations noted. Pt. denied any further injuries." [Doc. 39-1: Chung Ex at 29 (Feb. 28, 2023 Admin. Note)].

On March 3, 2023, the Plaintiff submitted a sick call request for painful swallowing. [Doc. 44: Plaintiff's Affid. at ¶ 11; Doc. 39-1: Chung Ex at 35]. The Plaintiff did not address the incident with Dr. Chung in the request because he feared retaliation by medical staff. [Doc. 44: Plaintiff's Affid. at ¶ 11].

On March 10, 2023, the Plaintiff saw Nurse Brenda Fore at a "pulmonary/respiratory" chronic care encounter for "wheezing." [Doc. 39-1: Chung Ex at 46 (March 10, 2023 Clinical Encounter)]. The Plaintiff was diagnosed with unspecified asthma and wheezing and he was prescribed an inhaler and prednisone. [Id. at 47; Doc. 39: Chung Affid. at ¶ 14]. Nurse Fore told the Plaintiff that he would have to address his neck pain at a separate appointment. [Doc. 44: Plaintiff's Affid. at ¶ 11].

On March 20, 2023, the Plaintiff saw Nurse Thomas Goforth on the Plaintiff's sick call request. [Doc. 39-1: Chung Ex. at 36 (March 20, 2023 Clinical Encounter)]. The Plaintiff reported continued pain when swallowing on the left side of his neck, stating that his throat was still hurting from when he was "assaulted by staff" on February 28, and that his discomfort had

8

Case 1:23-cv-00214-MR-WCM   Document 47   Filed 12/30/24   Page 8 of 14

improved with prednisone. [Id. at 36, 39]. The Plaintiff was instructed to contact medical if he had any difficulty swallowing. [Id. at 39].

On March 24, 2023, Nurse Fore saw the Plaintiff to follow up about his throat pain. [Id. at 41]. The Plaintiff reported that his pain was much improved and he was told to follow up at sick call as needed. [Id. at 41-42].

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

The forecast of evidence in the light most favorable to the Plaintiff shows that he was in full restraints when Dr. Chung forcefully grabbed the Plaintiff's neck while conducting a thyroid examination pursuant to Chung's normal procedure, without any desire to harm Plaintiff, and that the Plaintiff sustained, at most, a small red mark on his neck and pain that diminished over the few weeks following the encounter. No reasonably jury could conclude, based on this forecast of evidence, that the force Chung used was objectively sufficiently serious or that Chung acted with a subjectively culpable state of mind. To the extent that this forecast of evidence might show that Dr. Chung acted negligently and unprofessionally, it is insufficient to demonstrate the existence of a genuine dispute of material fact as to Chung's use of excessive force. See generally Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990) (mere negligence or malpractice does not violate the Eighth Amendment); Morrison v. Martin, 755 F. Supp. 683, 687, aff'd, 917 F.2d 1302 (4th Cir. 1990) (subjecting a prisoner to verbal abuse or profanity does not rise to the level of a constitutional violation). Accordingly, Defendant Chung's Motion for Summary Judgment will be granted.[7]

---

[7] Because the Plaintiff's excessive force claim cannot withstand summary judgment, his request for punitive damages likewise fails and the Defendant is entitled to summary judgment on that ground as well. [See Doc. 38 at 9-10].

## B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that the Defendant violated any constitutional right, the Defendant is entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

## C. Motion to Seal

There is a "presumption under applicable common law and the First Amendment that materials filed in this Court will be filed unsealed." LCvR 6.1(a); see Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (First Amendment right to access to court proceedings includes criminal and civil cases). However, a court has authority to seal documents before it based upon the court's inherent supervisory authority over its own files and records. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). The denial of access to documents under the First Amendment must be necessitated by a compelling government interest that is narrowly tailored to serve that interest. See In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986); In re State-Record Co., Inc., 917 F.2d 124, 127 (4th Cir. 1990). Before sealing judicial records, a court must identify the interest that overrides the public's right to an open court, and articulate supporting findings specific enough that a reviewing court can determine whether the order was properly entered. See Press–Enterprise Co. v. Superior Ct. of Ca., 464 U.S. 501, 510 (1984); LCvR 6.1. When addressing motions to seal, the Court must consider alternatives to sealing and specify whether the sealing is temporary or permanent, and also may redact such orders in its discretion. LCvR 6.1.

The Defendant asks the Court to seal confidential records that are attached to the Declarations of Defendant Chung and Nurse Moore, in order to protect the Plaintiff's medical information. [Doc. 43: Motion to Seal; see Doc. 22: Protective Order]. Exhibits 2 through 16 to Defendant Chung's Declaration and Exhibit 1 to Nurse Moore's Declarations are prison and medical records that are marked "Confidential – Subject to Protective Order." [See 39-1: Chung Ex at 5-93; Doc. 41: Moore Ex at 5-6].

The Court has considered alternatives to sealing and finds that the Plaintiff's and the NCDAC's interests in the confidentiality of certain prison and medical records overrides the public's right to an open court in this case, that there is no alternative that will adequately protect these concerns, and that permanently sealing these exhibits is warranted. The Defendant's Motion will be granted for the reasons set forth therein and the Clerk of Court will be directed to permanently seal Defendant Chung's Declaration Exhibits 2 through 16 to, and Nurse Moore's Declaration Exhibit 1.[8]

---

[8] The Plaintiff filed these and other medical records in opposition to the Defendant's Motion for Summary Judgment. [See Doc. 45]. The Clerk will be ordered to permanently seal the Plaintiff's exhibits for the same reasons.

## IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted and this action is dismissed with prejudice. The Motion to Seal is granted as stated in this Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 37] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Seal [Doc. 43] is **GRANTED**. The Clerk is respectfully instructed to permanently **SEAL** Exhibits 2 through 16 to Defendant Chung's Declaration [Doc. 39-1 at 5-93]; Exhibit 1 to Nurse Moore's Declaration [Doc. 41 at 5-6]; and the Plaintiff's Exhibits 9, 10, and 11 [Doc. 45 at 1-6].

**IT IS SO ORDERED.**

Signed: December 30, 2024

Martin Reidinger
Chief United States District Judge